IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VERON LEE KALOS | : | |
| | : | |
| | : | |
| | : | |
| v. | : | CCB-12-1532 |
| | : | |
| | : | |
| CENTENNIAL SURETY ASSOCIATES, | : | |
| INC. and GREENWICH INSURANCE | : | |
| COMPANY | : | |

**MEMORANDUM**

Plaintiff Veron Lee Kalos has brought this action alleging that defendants Centennial and Greenwich committed fraud involving surety bonds for a federal construction project undertaken by her company, Brickwood Contractors, Inc. The plaintiff, her husband, and Brickwood have filed numerous, duplicative lawsuits involving this transaction. The defendants have filed motions to dismiss Kalos's claim as well as motions for sanctions because of the repetitive filings. For the reasons set forth below, the defendants' motions will be granted.

**BACKGROUND**

Many courts have recounted the factual circumstances surrounding Kalos's various claims against Centennial and Greenwich (and other parties related to the same transaction). *See, e.g.*, *Kalos v. Law Offices of Eugene A. Seidel, P.A.*, 2009 WL 3583606 (E.D. Va. Oct. 26, 2009). In her current amended complaint, Kalos alleges that Centennial or Greenwich committed "fraud" or "lied" when Centennial issued surety bonds on behalf of Greenwich that were indemnified by Kalos. (Am. Compl., ECF No. 12, ¶¶ 78-79). As described in considerable detail by the Maryland Court of Special Appeals in examining an identical claim by Kalos, the bonds were surety for a construction project Brickwood was undertaking for the Federal Bureau of Prisons. *Ex rel Peter and Veron Kalos v. Centennial Surety Assoc. et al.*, Sept. Term 2008, No.

1

223, at *5 (Md. App. Sept. 3, 2009). Kalos and her husband, as managers of Brickwood, indemnified the bonds with commercial and residential property they owned in Virginia. *Id.* The Kaloses eventually defaulted on the bonds and were foreclosed upon. *Id.* at *6. On May 24, 2006, the Kaloses filed a complaint with the Maryland Insurance Administration ("MIA") Fraud Division asserting that, as Kalos does now, the Greenwich bonds were invalid. *Id.* After an administrative hearing in June 2007 on this issue, an ALJ concluded that Kalos's "allegation that [Centennial] fraudulently issued Greenwich bonds was totally unsupported by any evidence and consisted only of her assertions that the bonds were fraudulent." *Id.* at *8. The Circuit Court for Baltimore City affirmed the ALJ's conclusion on January 7, 2008. The Court of Special Appeals reexamined the MIA's record and concluded that the "evidence was sufficient to overcome [Kalos's] accusation of fraud . . . there was substantial evidence in the record to support the MIA's findings and conclusions that Centennial had not provided fraudulent bonds." *Id.* at *10.

The Kaloses have initiated over a dozen lawsuits related to the surety bonds and the resulting foreclosure.[1] They have been warned not to file any further lawsuits on these issues

---

[1] As listed by Greenwich (Mem., ECF No. 34-2, at 4-5): (i) *Brickwood Contractors, Inc., et al. v. USSC, et al.*, Case No.: 2005-1935, Circuit Court of Fairfax County, Virginia; (ii) *Brickwood Contractors, Inc., et al. v. USSC, et al.*, Case No.: 2006- 11180, Circuit Court of Fairfax County, Virginia; (iii) *Brickwood Contractors, Inc., et al. v. USSC,et al.*, Case No.: CAL 69690, Circuit Court of Prince William County, Virginia; (iv) *Peter Kalos, et al. v. HCC Insurance Holdings, Inc., et al.*, Case No.: CL81979, Circuit Court of Prince William County, Virginia; (v) *Peter Kalos, et al. v. Greenwich Insurance Company, et al*., Case No.: 1: 10-cv-00841, United States District Court for the Eastern District of Virginia; (vi) *Peter Kalos, et al. v. USSC, et al.*, Case No.: 2008-4629, Circuit Court of Fairfax County, Virginia; (vii) *Maryland Insurance Administration, Ex rel Peter and Veron Kalos, v. Centennial Surety Associates, Inc., et al.*, Maryland Insurance Administration, OAH No.: MIA-CC-33-07-10940, MIA No. MIA-2007-03-018; (viii) *Brickwood Contractors, Inc. et al. v. USSC, et al.*, Circuit Court for Prince William County, Virginia, Case No.: 73857; (ix) *Kalos, et al. v. USSC, et al.*, Circuit Court for Fairfax County, Virginia, Case No.: 2008-2036; (x) *Kalos, et al. v. Law Offices of Eugene A. Seidel, P.A., et al.*, United States District Court for the Eastern District of Virginia, Case No.: 1:09-cv-00833-JCC-TRJ; (xi) *Kalos, et al. v. HCC Insurance Holdings, Inc., et al.*, United States District Court for the Eastern District of Virginia, Case No.: 1:09-cv-01317-JCCTRJ; (xii) *Kalos, et al. v.*

because they have been given the opportunity to present their claims related to the bonds and resulting foreclosures to numerous judicial bodies. On September 15, 2010, the Circuit Court for Fairfax County dismissed a claim by the Kaloses against Centennial and another party related to the transaction on res judicata grounds and ordered that the Kaloses "shall file no future cases in this Court involving any named defendant or counsel without the permission of the undersigned." *Peter Kalos et al. v. United States Surety Co. et al.*, No. 2008-4649 (Va. Cir. Ct. (Fairfax) Sept. 15, 2010). The Fourth Circuit has noted that "the Kaloses have filed numerous actions against Greenwich" related to the foreclosure of their property because of their defaults on the surety bonds. *Kalos v. Greenwich Ins. Co. et al.*, 404 F. App'x 792, 793 (4th Cir. 2010). In a claim primarily against the party that purchased the foreclosed upon property, the court "notifie[d] the [Kaloses] that any further suits arising from the foreclosure of the property at issue . . . and [the Kaloses'] defaults on the obligations leading to that foreclosure, whether against [the defendant in that case] or any other party, may result in the imposition of a pre-filing review system, if appropriate." *Kalos v. Wisenbaker Holdings, LLC*, 2011 WL 761474, at *3 n.3 (E.D. Va. Feb. 23, 2011). Nonetheless, Kalos initiated this lawsuit in May, once again attacking the validity of the surety bonds.

## ANALYSIS

I.     **Motions to Dismiss**

Both Greenwich and Centennial have filed Motions to Dismiss under Rule 12(b)(6) arguing, among other grounds for dismissal, that Kalos's claims are barred by the doctrine of res judicata. "'[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint' and not

---

*Posner, et al.*, United States District Court for the Eastern District of Virginia, Case No.: 1:10-cv-00073-JCC-TRJ; and (xiii) *Kalos, et al. v. Wisenbaker Holdings*, LLC, United States District Court for the Eastern District of Virginia, Case No.: 1: 10-cv-1335-JCC.

to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). The court may, however, rule on an affirmative defense such as res judicata where "it clearly appears on the face of the complaint." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (quoting *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). Furthermore, "when entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." *Id.*

Where res judicata is based on a state court judgment, federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982). Thus, Maryland law controls what preclusive effect the MIA's administrative decision, and subsequent affirmance by the Circuit Court and Court of Special Appeals, should be afforded. In Maryland, the applicability of res judicata "to a judgment affirming or reversing an administrative or quasi-judicial decision appears to be well settled." *Garrett Park v. Montgomery County Council*, 262 A.2d 568, 571 (Md. 1970). To bar Kalos's claim under res judicata, the defendants must show "(1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; (2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and, (3) that there has been a final judgment on the merits." *Anne Arundel County Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005).

The applicability of res judicata to Kalos's claim against Centennial is obvious. Kalos and Centennial were opposing parties before the MIA, Circuit Court, and Court of Special

Appeals. This suit involves an identical claim, based on the same transaction, as the previous ones. *See Snell v. Mayor and City Council of Havre de Grace*, 837 F.2d 173, 176 (4th Cir. 1988) ("[S]o long as the subject matter of the two suits is substantially the same, a plaintiff cannot avoid the bar of res judicata simply by changing the theory of recovery or seeking a different remedy.") (citing *Mettee v. Boone*, 247 A.2d 390, 395 (Md. 1968)). And, as demonstrated by both the Circuit Court's *and* Court of Special Appeals's reexamination of the MIA's administrative finding, after a hearing and extensive review of the evidence, a final judgment on the merits was reached on Kalos's claim. Accordingly, Kalos's new claim against Centennial must be dismissed.

Unlike Centennial, however, Greenwich was not a defendant in Kalos's litigation before the MIA. Nevertheless, Greenwich can also preclude Kalos's claim under the doctrine of non-mutual defensive collateral estoppel. *See Standard Fire Ins. Co. v. Berrett*, 910 A.2d 1072, 1083-85 (Md. 2006). "The doctrine of 'collateral estoppel' or 'issue preclusion' . . . is a subset of the res judicata genre." *In re Microsoft Corp. Antitrust Litigation*, 355 F.3d 322, 326 (4th Cir. 2004). Maryland gives collateral estoppel effect to the judgments of its administrative agencies. *Stavely v. State Farm Mut. Auto Ins. Co.*, 829 A.2d 265, 270 (Md. 2003). Under Maryland law, a plaintiff is bound by a prior judgment on an issue where (1) "the issue decided in the prior adjudication [is] identical with the one presented in the action in question"; (2) there was a "final judgment on the merits"; (3) the party against whom the doctrine is asserted was a party in the prior adjudication; and (4) that party was "given a fair opportunity to be heard on the issue." *Berrett*, 910 A.2d at 1084.

Here, the application of defensive non-mutual collateral estoppel is paradigmatic and necessary to fulfill the doctrine's purposes of "avoid[ing] the expense and vexation of multiple

5

lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Id.* at 1083 (quoting *Colandrea v. Wilde Lake Community Ass'n*, 761 A.2d 899, 907 (Md. 2000)). Greenwich seeks to preclude Kalos from relitigating the issue of whether the surety bonds were fraudulent or otherwise invalid. (*See* MIA Final Order, Am. Compl., ECF No. 12, Ex. 9.) This issue is central to her claim. (*See, e.g.*, Am. Compl. ¶¶ 79, 82, 109, 111, 128-29.) The MIA, Circuit Court, and Court of Special Appeals examined Kalos's claim that the Greenwich surety bonds were somehow invalid and both unequivocally held that they were not. Thus, there has been an adjudication of an "identical" issue to the primary one in this case. Obviously, an administrative judgment, arrived at after briefing and hearing testimony, and examined by two levels of appellate courts, is a final judgment on the merits, and one for which Kalos was given a full and fair opportunity to be heard. *See also Kalos*, 404 F. App'x at 793 ("Here, the record reveals that the Kaloses have filed numerous actions against Greenwich . . . all related to the foreclosure of the property at issue in the instant case. These claims have been conclusively adjudicated and may not be relitigated."). Accordingly, Kalos is estopped from relitigation of the issue essential to her claim against Greenwich (seeking an invalidation of the surety bonds) and her claim must be dismissed with prejudice.[2]

**II.     Motions for Sanctions**

Both Greenwich and Centennial have filed motions seeking Rule 11 sanctions against Kalos, including a prefiling injunction prohibiting any further litigation in federal court related to

---

[2] Greenwich relies on the MIA proceeding for its res judicata argument. However, it appears that the Kaloses' 2010 lawsuit against Greenwich, among other parties, in the Eastern District of Virginia (Case No. 1:10-cv-841) was based on substantially the same complaint and sought nearly identical relief to the present case. The court dismissed that claim with prejudice on res judicata grounds, and it is likely that Kalos's claim against Greenwich is barred by res judicata for her attempt to relitigate that claim, yet again, in this court.

the surety bonds or resulting foreclosures. The defendants are entitled to both forms of relief from the Kaloses' vexatious and repetitive litigation, and each will be addressed in turn.

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "[I]t is clear that the primary, or 'first' purpose of Rule 11 is to deter future litigation abuse. A district court can and should bear in mind that other purposes of the rule include compensating the victims of the Rule 11 violation, as well as punishing present litigation abuse, streamlining court dockets and facilitating court management." *In re Kunstler*, 914 F.2d 505, 522 (4th Cir. 1990); *see also DeBauche v. Trani*, 191 F.3d 499, 512 (4th Cir. 1999) (a district court has the authority under Rule 11 "to impose sanctions for the filing of a frivolous complaint"). Thus, the court should impose sanctions where they are necessary to prevent plaintiffs, even ones proceeding pro se, from suing the same defendants repeatedly or tying up the courts with already litigated claims. *See, e.g.*, *Sanders v. Tyco Electronics Corp.*, 235 F.R.D. 315, 324 (W.D.N.C. 2006); *Balcar v. Bell & Assoc., LLC*, 295 F. Supp. 2d 635, 640-42 (N.D.W.V. 2003).

In determining the appropriate amount of sanctions, the court should consider "(1) the reasonableness of the opposing party's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the Rule 11 violation." *Balcar*, 295 F. Supp. 2d at 641 (quoting *In re Kunstler*, 914 F.2d at 522-23) ("Above all, a district court must keep in mind that 'the amount of a monetary sanction should always reflect the primary purpose of deterrence' of future litigation abuse.").

Here, Kalos's litigation behavior is abusive and vexatious. As detailed above, she and her husband have brought over a dozen cases against the defendants or related parties to invalidate

the surety bonds at issue in this case and/or defeat the foreclosure of their property. While the Kaloses obviously were within every right to exhaust the legal remedies available to protect their property interests, their repeated attempts to reopen these issues in the state and federal courts of Maryland and Virginia cannot continue and their filing of this frivolous suit must be sanctioned.

Both Greenwich and Centennial have stated that their legal costs in this case have already amounted to $4,000 each. A total of $8,000 in sanctions appears to be appropriate to deter the Kaloses in light of the *Kunstler* factors. First, given the time that the parties must have already incurred in preparing and filing dispositive motions, $4,000 in fees for the expense of litigating this suit is entirely reasonable. Second, while $8,000 in total is a significant amount, the need to deter any future litigation abuse by the Kaloses is substantial, and in light of litigation costs that Kalos has imposed on the parties in this matter and the courts of Maryland and Virginia, it is reasonable. Third, while Kalos is prosecuting this suit pro se, she and her husband own a contracting business, have indemnified bonds with a nearly one million dollar value, and have continued to litigate for over seven years. The court has no reason to believe the Kaloses are incapable of reimbursing the $8,000 they have cost the defendants in this case. Finally, the behavior being sanctioned here is exactly the type of conduct Rule 11 was designed to prevent. Accordingly, sanctioning Kalos in the amount of $8,000 is a fair, equitable measure that should convince the Kaloses they should no longer attempt to relitigate this matter.[3]

Furthermore, the All Writs Act, 28 U.S.C. § 1651(a), "grants federal courts the authority to limit access to the courts by vexatious and repetitive litigants like [the plaintiff]." *Cromer v. Kraft Foods North America, Inc.*, 390 F.3d 812, 817 (4th Cir. 2004). Certainly, "such a drastic

---

[3] The defendants have also fully complied with the "safe-harbor" provisions of Rule 11. *See Brickwood Contractors, Inc. v. Datanet Engineering, Inc.*, 369 F.3d 385, 396 (4th Cir. 2004). Both defendants have submitted certificates of compliance with their motions for sanctions. (*See* ECF Nos. 30-1 & 35-1.)

remedy must be used sparingly . . . consistent with constitutional guarantees of due process of law and access to the courts." *Id.* ("Access to the courts is 'the right conservative of all other rights, and lies at the foundation of orderly government.'") (quoting *Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142, 148 (1907)). Use of such a remedy against a pro se plaintiff "should be approached with particular caution." *Id.* at 818 (quotation omitted). However, "a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions" can, under certain circumstances, support the imposition of a prefiling injunction. *Id.* (quoting *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993)). "In determining whether a prefiling injunction is substantively warranted, a court must weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether [the party] has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." *Id.*

   The Kaloses are obviously deeply troubled and upset over the failure of their construction project and the resulting foreclosures of their property. The court does not doubt that these events have caused the Kaloses significant economic and personal hardship. Nevertheless, it is clear from the record that the plaintiff and her husband have spent the last seven years filing lawsuit after lawsuit attacking the foreclosures and the underlying surety bonds that instigated them. The plaintiffs have been warned by the Virginia state courts not to file additional claims on this matter. The Fourth Circuit and the Eastern District of Virginia have already noted this matter has been fully litigated. They have also taken their claim that the surety bonds were invalid to the MIA and Maryland state courts and were given a thorough opportunity to present their claim. Maryland provided them with two appeals. Now, Kalos has filed a claim in this court that, read

in the light most favorable to her, does nothing more than attempt to reopen the question of whether the surety bonds central to all of the prior cases were valid. This suit is yet another attempt to relitigate the Kaloses' prior claims, which have already been decided. And, importantly, this is not the first time the Kaloses have had claims dismissed on res judicata grounds. Judge Cacheris in the Eastern District of Virginia has already warned them that "any further suits arising from the foreclosure of the property at issue . . . whether against [the purchaser of the foreclosed property] or any other party, may result in the imposition of a pre-filing review system, if appropriate." *Kalos*, 2011 WL 761474, at *3 n.3.

> Thus, all four of the factors supporting the drastic remedy of a prefiling injunction have been satisfied in this case. Kalos's litigation history regarding these matters is long and substantial. She appears to have filed many duplicative lawsuits against the various parties involved in this transaction. Even as a pro se litigant, Kalos no longer can be said to have a good faith basis for filing such claims, when more than one court has informed her that these claims have been decided and she has been given the chance at multiple hearings to voice her arguments. The cumulative burden on the parties is now substantial. In fact, the Kaloses have even gone so far as to file suit against party *counsel* directly. *See Kalos v. Posner, et al.*, 2011 WL 761240 (E.D. Va. Feb. 23, 2011) (Shannon J. Posner, Greenwich's counsel in this matter, was a defendant in that case). Finally, it appears that simply warning the Kaloses that continued filing of lawsuits based on these issues will result in sanctions has not worked. They have already been warned. Accordingly, this court will enter an order enjoining Kalos from filing any future lawsuit in federal court for which the operative facts involve the surety bonds issued for Brickwood's Contract No. J20802c-011 with the Federal Bureau of Prisons, their defaults on those bonds, or the resulting foreclosures of their Virginia property. If the Kaloses file another

in the light most favorable to her, does nothing more than attempt to reopen the question of whether the surety bonds central to all of the prior cases were valid. This suit is yet another attempt to relitigate the Kaloses' prior claims, which have already been decided. And, importantly, this is not the first time the Kaloses have had claims dismissed on res judicata grounds. Judge Cacheris in the Eastern District of Virginia has already warned them that "any further suits arising from the foreclosure of the property at issue . . . whether against [the purchaser of the foreclosed property] or any other party, may result in the imposition of a pre-filing review system, if appropriate." *Kalos*, 2011 WL 761474, at *3 n.3.

Thus, all four of the factors supporting the drastic remedy of a prefiling injunction have been satisfied in this case. Kalos's litigation history regarding these matters is long and substantial. She appears to have filed many duplicative lawsuits against the various parties involved in this transaction. Even as a pro se litigant, Kalos no longer can be said to have a good faith basis for filing such claims, when more than one court has informed her that these claims have been decided and she has been given the chance at multiple hearings to voice her arguments. The cumulative burden on the parties is now substantial. In fact, the Kaloses have even gone so far as to file suit against party *counsel* directly. *See Kalos v. Posner, et al.*, 2011 WL 761240 (E.D. Va. Feb. 23, 2011) (Shannon J. Posner, Greenwich's counsel in this matter, was a defendant in that case). Finally, it appears that simply warning the Kaloses that continued filing of lawsuits based on these issues will result in sanctions has not worked. They have already been warned. Accordingly, this court will enter an order enjoining Kalos from filing any future lawsuit in federal court for which the operative facts involve the surety bonds issued for Brickwood's Contract No. J20802c-011 with the Federal Bureau of Prisons, their defaults on those bonds, or the resulting foreclosures of their Virginia property. If the Kaloses file another

federal lawsuit in this matter, without the court's permission, they will likely be in contempt of this court.

## **CONCLUSION**

For the above reasons, the defendants' motions to dismiss and motions for sanctions will be granted.

A separate order follows.

<u>December 12, 2012</u>                              <u>         /s/                           </u>
         Date                                             Catherine C. Blake
                                                          United States District Judge